UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| NKEMATEATSA AZEATEH CELESTIN | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 5:26-cv-113 |
| | § | |
| ORLANDO RODRIGUEZ, *et al.* | § | |
| | § | |

### ORDER

Petitioner brings this 28 U.S.C. § 2441 Petition challenging his continued detention despite being granted withholding of removal (*see* Dkt. No. 1). Following an exhaustive review of the law and facts, the Court **GRANTS IN PART AND DENIES IN PART** the Petition.

### I.   BACKGROUND

Petitioner, a citizen of Cameroon, entered the United States on December 11, 2024 (Dkt. Nos. 1-1 at 7; 6-1 at 2–3). Immigration officials immediately apprehended him, detained him, and placed him in removal proceedings (Dkt. Nos. 6-1 at 1; 6-2 at 1; 6-3 at 2, ¶ e).

An immigration official determined that Petitioner had a credible fear of returning to Cameroon (Dkt. No. 6-3 at 2, ¶ c). Petitioner then sought asylum, withholding of removal under 8 U.S.C. § 1231(b)(3), and protection under the Convention Against Torture ("CAT") (Dkt. Nos. 1-1 at 2–5; 6-3 at 2, ¶ g). On May 20, 2025, an immigration judge ("IJ") ordered him removed and denied asylum and CAT protection, but concurrently granted him withholding of removal to Cameroon (Dkt. Nos. 1-1 at 2; 6-3 at 2, ¶ h). Both Petitioner and DHS waived appeal (Dkt. Nos. 1-1 at 5; 6-3 at 2, ¶ h).

Officials conducted a Post Order Custody Review ("POCR") and issued a Decision to Continue Detention on October 31, 2025, or 164 days after his removal order was final

1

(Dkt. No. 6-4). The decision stated that Petitioner posed a significant risk of flight pending removal based on "a review of [his] file" and "[his] failure to comply with facilitating the issuance of a travel document" (Dkt. No. 6-4 at 1; *see* Dkt. No. 6-3 at 2, ¶ *l*). It cited no criminal, immigration, or probation history; history of escapes; failures to appear for judicial or other proceedings; or disciplinary problems while detained. Officials served the document on Petitioner on November 24, 2025 (Dkt. No. 6-4 at 3). Respondents do not explain whether this review was an untimely 90-day review or a 180-day review, and do not cite to any previous or subsequent POCRs (Dkt. No. 6-3 at 2, ¶ *l*).[1]

Petitioner remains in ICE's custody at the Webb County Detention Center (Dkt. Nos. 1-1 at 33; 6 at 2; 1-1 at 7, ¶ 2). He states that he has cooperated with ICE, complied with all facility rules, attended all required hearings and proceedings, provided all identifying information and documents to which he has access, and has no criminal convictions (Dkt. No. 1-1 at 7–8, ¶¶ 8, 13). He also claims that his extended detention has harmed him physically and mentally and prevents him from financially supporting his wife and children in Cameroon (Dkt. No. 1-1 at 8, ¶¶ 11–12).

At the time he filed his Petition, he had been detained for over eight months since his removal order became final and over thirteen months in total (Dkt. No. 1-1 at 7, ¶ 2). Petitioner challenges his continued detention (1) as unlawful under *Zadvydas v. Davis*, 533 U.S. 678 (2001), and (2) as arbitrary and incompatible with the guarantees of the Due Process Clause in the absence of a timely, reasoned custody review (Dkt. No. 1 at 7–8). He seeks immediate release from custody (Dkt. Nos. 1 at 9; 7 at 10) Respondents

---

[1] According to DHS regulations, a district director is required to conduct a PCOS before the 90-day removal period lapses, if the alien's removal cannot be accomplished during the removal period, and an additional review after 180 days. 8 C.F.R. § 241.4(k)(1)(i); 8 C.F.R. § 241.4(k)(2)(ii).

moved for summary judgment (Dkt. No. 6) and Petitioner filed a response and cross-motion for summary judgment (Dkt. No. 7). The motions are ripe for decision.

## II.   LEGAL STANDARDS

### A.  28 U.S.C. § 2241

Under 28 U.S.C. § 2241(c)(3), a detainee may seek habeas relief if they are "in custody in violation of the Constitution or laws or treaties of the United States." "The petitioner 'bears the burden of proving that [she] is being held contrary to law; and because the habeas proceeding is civil in nature, the petitioner must satisfy [her] burden of proof by a preponderance of the evidence.'" *Puertas-Mendoza v. Bondi*, No. SA-25-CV-00890-XR, 2025 WL 3142089, at *1 (W.D. Tex. Oct. 22, 2025) (Rodriguez, J.) (quoting *Villanueva v. Tate*, No. CV H-25-3364, 2025 WL 2774610, at *4 (S.D. Tex. Sept. 26, 2025)).

A court entertaining a habeas petition shall immediately "award the writ or issue an order directing the respondent to show cause why the writ should not be granted." § 2243. A court need not hold a hearing if the habeas petition "raises only questions of law, or questions regarding the legal implications of undisputed facts." *Tijerina v. Thornburgh*, 884 F.2d 861, 866 (5th Cir. 1989); *see also Gomez-Simeon v. Bondi*, No. SA-25-CV-01460-JKP, 2025 WL 3470872, at *1, *6 (W.D. Tex. Nov. 24, 2025) (Pulliam, J.) (granting habeas petition without a hearing); *Puertas-Mendoza*, 2025 WL 3142089, at *1, *5 (same).

### B.  Federal Rule of Civil Procedure 12(b)(1)

Under Federal Rule of Civil Procedure 12(b)(1), a party may move for dismissal of a suit, arguing the court lacks subject matter jurisdiction. "The party asserting jurisdiction 'constantly bears the burden of proof that jurisdiction does in fact exist.'" *Morris v. Thompson*, 852 F.3d 416, 419 (5th Cir. 2017) (quoting *Ramming v. United*

*States*, 281 F.3d 158, 161 (5th Cir. 2001)). "The motion should be granted only if it appears certain the plaintiff cannot prove any set of facts that would entitle [them] to recovery." *Id.* (citing *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998)).

### C. Federal Rule of Civil Procedure 12(b)(6)

Courts have found "that use of Rule 12(b)(6) in [the] habeas context is inconsistent with the habeas rules." *Ndudzi v. Castro*, No. SA-20-CV-0492-JKP, 2020 WL 3317107, at *9 (W.D. Tex. June 18, 2020); *Olya v. Garite*, No. EP-25-CV-00083-DCG, 2025 WL 3254931, at *3 n.32 (W.D. Tex. Oct. 14, 2025). Accordingly, "[a] motion to dismiss for failure to state a claim is an inappropriate practice in habeas." *Miramontes v. Driver*, 243 F. App'x 855, 856 (5th Cir. 2007) (citing *Browder v. Director, Dep't of Corrections of Ill.,* 434 U.S. 257, 269 n.14 (1978)).

## III.   DISCUSSION

Respondents argue that Petitioner's continued detention is lawful because he has not met his initial burden to show that there is no significant likelihood of removal in the reasonably foreseeable future (*see* Dkt. No. 6). They also argue that Petitioner failed to demonstrate compliance with special review procedures in 8 C.F.R. § 241.13 and has not applied for a visa to a third country (Dkt. No. 6 at 6–9). The Court addresses each argument in turn.

### A. Merits of Habeas Petition

Pursuant to the Immigration and Nationality Act ("INA"), the Government ordinarily secures the removal of an alien during the statutory 90-day period following an order of removal. 8 U.S.C. § 1231(a)(1)(A). As relevant here, the removal period begins to run on "[t]he date the order of removal becomes administratively final."

§ 1231(a)(1)(B)(i). Aliens are generally detained during the removal period. § 1231(a)(2)(A).

If the alien is not removed during this statutory 90-day period, the Government may continue to detain them for "a period reasonably necessary to bring about that alien's removal from the United States." *Zadvydas*, 533 U.S. at 689. Reasonableness should be measured "in terms of the statute's basic purpose, namely, assuring the alien's presence at the moment of removal." *Id.* at 699. To aid in this determination, the Supreme Court set a presumptively reasonable six-month period of post-removal detention. *Id.* at 701. Beyond that point, "once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* "And for detention to remain reasonable, as the period of prior post-removal confinement grows, what counts as the reasonably foreseeable future conversely would have to shrink." *Id.* (citation modified). It is axiomatic, however, that the Constitution forbids an alien's indefinite or permanent post-removal detention. *Id.* at 689.

1.      Presumptively Reasonable Period of Detention

As a threshold matter, the Court must determine whether Petitioner has been detained for the presumptively reasonable six-month period. Petitioner's reasonable detention period accrues the date his removal order became final. 8 U.S.C. § 1231(a)(1)(B)(i). His removal order became final on the date it was issued, May 20, 2025, because all parties waived appeal (Dkt. Nos. 1-1 at 5; 6-3 at 2, ¶ h). Therefore, Petitioner's post-removal detention commenced on May 20, 2025, more than eight months before he filed his Petition on January 24, 2026 (Dkt. No. 1). Up to the date of this Order, Petitioner has been detained approximately nine and a half months after his final order of removal.

*2.*      Petitioner's Burden

At this point, Petitioner need only demonstrate "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 699. Although the Fifth Circuit instructed that an alien's onus extends beyond "conclusory statements," there is no further binding guidance. *Andrade v. Gonzales*, 459 F.3d 538, 543–44 (5th Cir. 2006). At any rate, Petitioner's sworn declaration, which explains his immigration proceedings and officials' actions after his final order of removal (Dkt. No. 1-1 at 7–8, ¶¶ 6–10), along with Respondents' tendered evidence, satisfies Petitioner's burden.

First, third-country removals are exceedingly rare. In fiscal year 2017, "only 1.6% of aliens who were granted withholding of removal were actually removed to an alternative country." *Johnson v. Guzman Chavez*, 594 U.S. 523, 537 (2021) (citation omitted). The grant of withholding of removal "'substantially increases the difficulty of removing'" an undocumented alien. *Marquez-Amaya v. Thompson*, 2025 WL 3654327, at *5 (W.D. Tex. Dec. 15, 2025) (quoting *Munoz-Saucedo v. Pittman*, 789 F. Supp. 3d 387, 398 (D.N.J. 2025)). Indeed, aliens with withholding of removal status "typically remain[ ] in the United States for the foreseeable future." *Johnson*, 594 U.S. at 552 (Breyer, J., dissenting). This makes sense, as foreign countries have little incentive to accept aliens with no connections to their country. *See Puertas-Mendoza*, 2025 WL 3142089, at *3 ("[F]oreign governments 'routinely deny' requests to receive people who lack a connection to the would-be receiving country.").

Aside from the rarity of third-country removals, ICE attempted to remove Petitioner to no avail. By Respondents' own account, Costa Rica and Panama expressly declined officials' request to accept Petitioner (Dkt. No. 6-3 at 2, ¶ j).  El Salvador failed

to even respond (Dkt. No. 6-3 at 2, ¶ j). Although over four months have elapsed since the first set of requests were submitted, Respondents do not list any additional requests or identify an additional third country. Rather, an ICE official's declaration states, without elaboration, that as of February 2, 2026, the Office of Enforcement and Removal Operations ("ERO") is "working with [ERO Headquarters Removals and International Operations] to identify and secure removal to a third country" (Dkt. No. 6-3 at 3, ¶ o). Regardless, standing alone, pending requests are "insufficient to show that [Petitioner's] removal is likely to occur in the reasonably foreseeable future." *Garcia-Aleman v. Thompson*, No. SA-25-CV-886-OLG (HJB), 2025 WL 3534806, at *5 (W.D. Tex. Nov. 24, 2025), *report and recommendation adopted*, No. SA-25-CV-00886-OLG, 2025 WL 3532179 (W.D. Tex. Dec. 9, 2025); *Trejo v. Warden of ERO El Paso E. Mont.*, No. EP-25-CV-401-KC, 2025 WL 2992187, at *5–6 (W.D. Tex. Oct. 24, 2025). To date, none of the Government's requests yielded results, significantly undercutting any likelihood that his removal is foreseeable.

Finally, although ICE cannot legally remove Petitioner to Cameroon, nothing precludes a third country from extraditing him to Cameroon—where he will likely be persecuted. *See Trejo*, 2025 WL 2992187, at *5; *see also Sagastizado v. Noem (Sagastizado II)*, 802 F. Supp. 3d 992, 1015 (S.D. Tex. 2025) (Saldaña, J.) (discussing how once an alien is removed, non-refoulment may no longer be feasible). As this District recognized, "[i]t is in the public interest to prevent 'aliens from being wrongfully removed, particularly to countries where they are likely to face substantial harm.'" *Misirbekov v. Venegas (Misirbekov III)*, No. 1:25-CV-00168, 2025 WL 2450991, at *2 (S.D. Tex. Aug. 15, 2025) (Olvera, J.) (quoting *Nken v. Holder*, 556 U.S. 418, 436 (2009)). This important consideration, taken with Petitioner's other evidence, persuades the Court that he

carried his burden.

      3.      Whether the Government Rebutted Petitioner's Showing

Simply put, the Government's rebuttal efforts do not rise to the occasion. Respondents rest on the unsubstantiated assertion that, because ERO is "working . . . to identify and secure removal to a third country," there is a "significant likelihood of removal within the reasonably foreseeable future" (Dkt. No. 6-3 at 3, ¶ o). However, their evidence shows that officials have submitted requests to three countries, none of which agreed to accept Petitioner, and identifies no other possible third country to which he could likely be removed (Dkt. No. 6-3 at 2–3, ¶¶ j, m, o).

What is more, Respondents have not proffered any evidence—let alone even alleged—that a foreign country has *ever* accepted a Cameroonian national deported from the United States. *See Trejo*, 2025 WL 2992187, at *6; *see also Hassoun v. Sessions*, 2019 WL 78984, at *5 (W.D.N.Y. Jan. 2, 2019). Petitioner had been detained for over eight months, well more than the presumptively reasonable period, when he filed his Petition, and Respondents' inability to secure Petitioner's removal to this point casts serious doubt on their ability to do so at all. Thus, Petitioner's removal is not reasonably foreseeable, and his continued confinement amounts to an unconstitutional, indefinite detention. *See Zadvydas*, 533 U.S. at 696, 699 (finding that neither the INA nor the Constitution authorizes indefinite detention); *id.* at 701(" for detention to remain reasonable, as the period of prior post-removal confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink"); *see also Misirbekov III*, 2025 WL 2450991, at *1–2 (detention of alien for six months and sixteen days was unreasonable where alien had no citizenship or ties to another country besides his country of origin and he would face "political persecution, torture, and death" if returned there).

### B. Special Review Procedures in 8 C.F.R. § 241.13

Respondents argue that Petitioner "has failed to demonstrate compliance" with the special review procedures in 8 C.F.R. § 241.13, and urge the Court to deny habeas relief on this basis (Dkt. No. 6 at 7–8). *See* 8 C.F.R. § 241.13(d)(1) ("An eligible alien may submit a written request for release to the [Headquarters Post-Order Detention Unit ("HQPDU")] asserting the basis for the alien's belief that there is no significant likelihood that the alien will be removed in the reasonably foreseeable future."). They maintain that Petitioner "has not presented any evidence that he has submitted a written claim to HQPDU in which he asserts that there is no likelihood of removal in the reasonably foreseeable future" (Dkt. No. 6 at 7). However, they also acknowledge his declaration stating that he submitted a written request for custody review on September 25, 2025, and that his sponsor submitted a written request on his behalf on September 10, 2025 (Dkt. No. 6 at 7; *see* Dkt. No. 1-1 at 7, ¶¶ 6-7). To the extent Respondents seek summary judgment on this point, their conclusory statement is insufficient to demonstrate a genuine issue of material fact.

In any event, the Court is unconvinced that a petitioner's failure to submit a written claim forecloses habeas relief. To the Court's knowledge, the Fifth Circuit has not spoken directly regarding § 241.13(d)(1)'s applicability. Nor did Respondents cite any authority—binding or persuasive—holding that § 241.13(d)(1)'s procedures are required. *See Lorenzo v. Bondi*, 2:25-cv-00923 KWR-GJF, 2026 WL 84521, at *4 (D.N.M. Jan. 12, 2026) ("Thus, the Court cannot find that the existence of an unspecified impact on an administrative scheme outweighs the clear impact upon Petitioner's due process rights warranting prompt access to a federal judicial forum."); *see also Jimenez Chacon v. Lyons*, No. 2:25-CV-977-DHU-KBM, 2025 WL 3496702, at *9 (D.N.M. Dec. 4, 2025) ("Requiring

9

[p]etitioner to submit a request for release to HQPDU at this point would place the burden back on him and further prolong his already lengthy detention."). Perhaps equally important, § 241.13 mirrors the *Zadvydas* inquiry. *Lorenzo*, 2026 WL 84521, at \*4 (first citing 8 C.F.R. § 241.13(f); and then citing *E.M.M. v. Almodovar*, No. 1:25-cv-08212-MMG, 2025 WL 3077995, at \*3 (S.D.N.Y. Nov. 4, 2025)). The Court is well-versed in the *Zadvydas* framework and fully capable of deciding the matter absent specific 'agency expertise.'" *Id.* at \*3 (citing *Jimenez Chacon*, 2025 WL 3496702, at \*9).

Furthermore, § 241.13(d)(1)'s language implies it is permissive, not mandatory. With the use of "may," the regulation *offers* an aggrieved party recourse to tender a written request to HQPDU. *See United States v. Rodgers*, 461 U.S. 677, 706 (1983) (in statutory construction, "[t]he word 'may,' . . . usually implies some degree of discretion"). While this precept is "by no means invariable," Respondents have done little to persuade the Court otherwise. Accordingly, the Court concludes that Respondents' argument under 8 C.F.R. § 241.13 does not supply a lawful basis for his continued detention and does not warrant summary judgment in their favor.

### C. Petitioner's Efforts to Obtain a Third-country Visa

Finally, Respondents assert that the Court should deny habeas relief because "Petitioner has not identified any self-made efforts to comply with his removal order," including "evidence that he has applied for a visa to a third country where he is not afraid of going" (Dkt. No. 6 at 8) (citing *Lawal v. Lynch*, 156 F. Supp. 3d 846, 850 (S.D. Tex. 2016)).

To the extent Respondents argue that the reasonable detention period should be tolled due to Petitioner's failure to apply for a third-country visa, the Court finds the argument unsupported. In *Balogun v. INS*, 9 F.3d 347 (5th Cir. 1993), the Fifth Circuit

considered whether the reasonable removal period is tolled[2] when an alien deliberately obstructs their otherwise imminent deportation. After his conviction for credit card fraud and misuse, a Nigerian national, who overstayed his student visa, allegedly refused to corroborate his identity with the Nigerian embassy to secure his deportation. *Balogun*, 9 F.3d at 348, 349 n.2. Without crediting the claims, the Fifth Circuit held "if it is shown that petitioner by his conduct has intentionally prevented the INS from effecting his deportation, the six-month period should be equitably tolled until petitioner begins to cooperate with the INS in effecting his deportation or his obstruction no longer prevents the INS from bringing that about." *Id.* at 351.

*Balogun*'s principles were codified in 8 U.S.C. § 1231(a)(1)(C), which extends the reasonable period of detention "beyond a period of 90 days . . . if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal." District courts have applied equitable tolling when aliens: affirmatively contact authorities to renounce their citizenship, thwart foreign consulates' requests to secure travel documents, tie up the underlying deportation order in litigation, and refuse to board an aircraft to depart the country. *Lawal*, 156 F. Supp. 3d at 854–55 (renouncing citizenship); *Hook v. Lynch*, 639 F. App'x 229, 230 (5th Cir. 2016) (refusal to comply with requests); *Hernandez-Esquivel v. Castro*, No. 5-17-CV-0564-RBF, 2018 WL 3097029, at *7 (W.D. Tex. June 22, 2018) (deportation order litigation); *Olowu v. Kelly*, No. SA-17-CA-00469-JWP, 2017 WL 8181530, at *2 (W.D. Tex. Sept. 1, 2017) (refusal to board plane

---

[2] At the time *Balogun* was decided, the relevant statute read: "[W]hen a final order of deportation under administrative processes is made against any alien, the Attorney General shall have a period of six months from the date of such order, or, if judicial review is had, then from the date of the final order of the court, within which to effect the alien's departure from the United States." 8 U.S.C. § 1252(c)(1), *amended by* 8 U.S.C. § 1231(a)(1)(A).

11

to Nigeria). These cases all share common denominators: the aliens were being deported to their country of origin and were not granted withholding of removal from it. *Lawal*, 56 F. Supp. 3d at 849–50, 855 (alien was denied asylum and withholding of removal, and ICE sought to deport him to Nigeria); *Hook*, 639 F. App'x at 230 (alien purported to be a United Kingdom citizen, but refused their requests); *Hernandez-Esquivel,* 2018 WL 3097029, at *2 (withholding of removal and relief under the Convention Against Torture were denied); *Olowu*, 2017 WL 8181530, at *1 (asylum and withholding of removal were denied). Equitable tolling has never been applied so broadly as to suspend the detention period when an alien, who has been granted withholding of removal from his country of origin, neglects to "endeavor[ ] to comply with his order that he be removed from the United States" (Dkt. No. 6 at 8).

What is more, Respondents' position is not supported by the record. Petitioner's declaration states that he has provided ICE with "identifying information and documents that [he has] access to, including [his] Cameroonian passport, national identity card, school identity card, and sponsor-related information" (Dkt. No. 1-1 at 7-8, ¶ 8). He further states, "ICE has not informed [him] of any additional specific action [he] can take that would result in [his] release" (Dkt. No. 1-1 at 8, ¶ 8). Respondents do not contest these specific facts directly. Although the Decision to Continue Detention alleged that Petitioner "fail[ed] to comply with facilitating the issuance of a travel document," neither the decision nor the ICE official's declaration provide any specific facts as to how Petitioner failed to comply (Dkt. No. 6-4 at 1; *see* Dkt. No. 6-3 at 2, ¶ *l*). Nor can the Court give credence to the allegation that Petitioner, who has been in custody for over a year, ought to take affirmative steps to apply for a visa or identify a third country for his removal. *Olya v. Garite*, No. EP-25-CV-00083-DCG, 2025 WL 3254931, at *6 (W.D. Tex.

Oct. 14, 2025) (citing *Seretse-Khama v. Ashcroft*, 215 F. Supp. 2d 37, 48 (D.D.C. 2002)) ("[T]o the extent [petitioner], still does not *wish* to be removed, reluctance alone cannot support continued detention.") Quite simply, it is unreasonable to expect a detainee to do so.

Lastly, the Court gives little weight to Petitioner's failure to sign the Decision to Continue Detention. That does not rise to the level of intentional obstruction or conspiring to prevent his removal. *See Olya*, 2025 WL 3254931, at \*6 (finding that noncompliance under § 1231(a)(1)(C) did not justify an alien's continued detention).

## IV.   CONCLUSION

For the foregoing reasons, Petitioner's habeas Petition (Dkt. No. 1) is **GRANTED IN PART AND DENIED IN PART**. Petitioner's Motion for an Order to Show Cause (Dkt. No. 2) is **DENIED AS MOOT**. Respondents' Motion for Summary Judgment (Dkt. No. 6) is **DENIED**. Petitioner's Cross-Motion for Summary Judgment (Dkt. No. 7) is **GRANTED IN PART AND DENIED IN PART.**

Respondents are **ORDERED** to **RELEASE** Petitioner from custody to a public place **no later than 5:00 p.m. on March 20, 2026**. Petitioner's release is subject to 8 U.S.C. § 1231(a)(3) and 8 C.F.R. § 241.5.

Respondents are **ORDERED** to **NOTIFY** Petitioner's counsel of the exact location and exact time of her release as soon as practicable and **no less than two hours before his release**.

The parties are **ORDERED** to file a Joint Status Report **no later than 5:00 p.m. on March 23, 2026**, confirming that Petitioner has been released and advising the Court of his conditions of release.

The Court's prior **ORDER** that Respondents **NOTIFY** Petitioner's counsel and the Court of any planned removal of him from the United States, at least five (5) days before any such removal, **REMAINS IN PLACE**.

It is so **ORDERED**.

**SIGNED** March 18, 2026.

Marina Garcia Marmolejo
United States District Judge